## American Life Insurance Company *versus* Isett's Administrator.

1. In an action on a life policy, the assured having taken his own life, and the allegation being that he was insane, the court charged: "If the assured was not conscious of the act he was committing, but acted under an insane impulse or delusion sufficient to impair his understanding or will, or if his reasoning was so far overthrown by his mental condition that he was incapable of exercising his judgment in regard to the consequences, the defendants are liable." *Held* not to be error.

[American Life Insurance Co. *v.* Isett's Adm'rs.]

2. A point was : "If F. B. Isett, at the time of his death, was conscious that his death would follow the discharging of the pistol in his own hands. there can be no recovery, although he was laboring under mental depression or disturbance of the mind." The court below negatived the point. *Held* not to be error.

3. Harrington *v.* Keystone Insurance Co., 9 Harris 466, remarked on.

May 24th 1873. Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Common Pleas of *Blair county:* Of May Term 1873, No. 77.

This was an action of covenant, brought to July Term 1871, of the court below, by John S. Isett, administrator, &c., of Franklin B. Isett, deceased, against the American Life Insurance Company, on a policy of insurance, issued by the defendants, on the life of the decedent. One of the conditions of the policy was : in case the assured should " die by his own hand, * * * this policy shall be void, null and of no effect."

The deceased died on the 14th of March 1871, having committed suicide by shooting himself through the head with a pistol.

The ground upon which the plaintiff claimed to recover was that the deceased was insane at the time he committed the act which resulted in his death.

On the trial, May 8th 1872, before Mayer, P. J., of the Twenty-fifth District, much evidence was given on the question of the insanity of the decedent.

The defendant submitted these points :—

" 1. The law presumes every person to be sane, and the burden of proving insanity is upon the person alleging it.

. " 2. If the jury believe Frank B. Isett destroyed his life because he was suffering from some physical infirmity, for the purpose of terminating his suffering, there can be no recovery in this case.

" 3. If F. B. Isett, at the time of his death (if it resulted from his own hands), was conscious that his death would follow the discharging of the pistol in his hands, there can be no recovery, although he was laboring under mental depression or disturbance of the mind.

"4. If the jury find that Frank B. Isett came to his death ' by his own hands,' sane or insane, there can be no recovery."

The court charged :—

* * * " The execution of the policy, its terms and conditions, the death of Isett and the fact that his death was caused by self-killing, the instrument of death being a pistol fired by himself, the ball penetrating his brain and producing death, are not contested. But the plaintiff contends that this act of self-destruction was not death by his own hands within the meaning of the words as con-

24 P. F. SMITH—12

tained in the policy, but that when Isett discharged the pistol he was insane, and at the time so far unconscious of the nature and consequences of the act he was committing, and the exercise of his will was so far controlled by the diseased state of his mind as to be incapable of understanding it; or, in other words, incapacitated, in the judgment of the law, from committing any act that would operate to defeat the policy.

" The defendants contend that when Isett shot himself he had consciousness enough and understanding capable of comprehending the nature and consequences of his act, and thus make it ' death by his own hand,' within the condition of the policy.

" Insanity is an abnormal condition of the mind, and the legal presumption is that every one is sane until the contrary is established by evidence sufficient to satisfy a jury, and it is incumbent upon the party alleging insanity to prove it by affirmative evidence.

" In this case, if the jury find that the death of Frank B. Isett resulted from the act of self-killing, it will then be their duty to inquire what was his mental condition, as it affected the exercise of his will and the comprehension of the nature of the act that he was about to commit. This is the all-important question in the case, and upon an intelligent solution of it the verdict of the jury must depend. The fact of self-killing being established, or not controverted, it is for the plaintiff to satisfy the jury that Isett was in the mental condition which we have just laid down for their guidance, in order to render the defendants liable upon their policy. Now, what is the evidence upon which plaintiff relies to prove that state of insanity which rendered him incapable of committing ' death by his own hand,' or suicide, within the rule, as stated to you? It will not be necessary to go into a minute detail of the facts and circumstances upon which plaintiff relies to establish the existence of this diseased state of mind. * * * It is claimed by plaintiff's counsel, and we are requested to charge the jury, ' that the fact that the deceased committed suicide is of itself evidence of insanity. We decline thus to charge the jury, but we say to you that it may be evidence in the case to be considered by the jury, in connection with other facts and circumstances, for the purpose of enabling them to determine the mental condition of the deceased. The fact of the suicide raises no presumption of insanity. All the facts and circumstances in evidence are submitted to the jury for their consideration, and from them, and them alone, they are to determine the question in this case. [If, at the time the pistol was fired, Frank B. Isett was conscious of the act and intended to take his life, and had sufficient mental capacity to understand and appreciate the nature and consequences of his act, the defendants are not liable under the condition of the policy. If, on the other hand, he was not thus conscious, and had no such

[American Life Insurance Co. *v.* Isett's Adm'rs.]

mental capacity, but acted under an insane impulse or delusion, sufficient to overpower his will, or his reasoning powers were so far overthrown by his mental condition that he was incapable of exercising his reasoning faculties with regard to the act of self-destruction, then the defendants are liable.]

"These are the legal instructions and the rule of law by which the jury are to be guided in determining this case. We will recapitulate, so that the jury may have no misunderstanding.

"In the first place, you will determine, applying these rules of law to the whole of the evidence submitted for your consideration, [if, at the time Isett fired the pistol, he was conscious of the act he was committing, and intended to take his life, and had sufficient mental capacity to comprehend and understand the nature and consequences of this act, then defendants are not liable. If, on the other hand, he was not thus conscious, but acted under an insane impulse or delusion, sufficient to overpower his understanding and will, or if his reasoning power was so far overthrown by his mental condition that he was incapable of exercising his judgment in regard to the consequences, then the defendants are liable.] * * *

"There is one point: If the jury find that Frank B. Isett came to his death 'by his own hand,' sane or insane, there can be no recovery. We answer that point in the negative. We have virtually negatived it in our general charge, and we do so now."

The verdict was for plaintiff for $5300.

The defendants took a writ of error, and assigned for error the refusal of their fourth point, the part of the charge in brackets, and not affirming their third point.

*H. M. Baldridge* (with whom was *James F. Milliken*), for plaintiffs in error.—The influences which guided or controlled the will of the party in committing the act, cannot affect the risk which the insurers intended should be excepted from the terms of the policy: Hartman *v.* Keystone Insurance Company, 9 Harris 466; Cooper *v.* Massachusetts Life Insurance Company, 1 Bigelow's Life and Accident Ins. Rep. 758. If the insured understood the physical consequences of his act, it rendered the policy void. Did the court intend in the charge, that if Isett did not comprehend the moral and physical nature and consequences of his act, the defendants were liable? If it was intended to include the moral nature and consequences of his act, the court clearly erred. If it was meant the physical nature and consequences of his act, the language employed does not so restrict it, and the jury would very naturally and easily suppose it was intended to include both: Borradaile *v.* Hunter, 2 Bigelow's Life and Accident Ins. Rep. 280. Suicide during insanity, committed intentionally and knowingly, will vitiate a life-policy conditioned to be void if the assured shall

die by his own hand: Nimick *v.* Mutual Ben. Life Ins. Co., 1 Bigelow's Life and Accident Ins. Rep. 689 ; s. c. 3 Brewster 502 ; Dean *v.* American Life Ins. Co., 1 Bigelow 195. If the insured intended taking his life, it is immaterial whether he understood its moral aspects or was capable of distinguishing between right and wrong : Gay *v.* Union Mut. Life Ins. Co., 2 Bigelow 15 ; Cliff *v.* Schwabe, Id. 312.

*S. S. Blair*, for defendant in error, cited Beartin *v.* Farmers' Loan and Trust Co., 4 Hill 731 ; Easterboro' *v.* Union Life Ins. Co., 54 Maine —.

The opinion of the court was delivered, July 2d 1873, by

MERCUR, J.—The distinction now so strongly pressed by the counsel for the plaintiff, does not appear to have been made in the court below. The attention of the court was not called to the moral nature and consequences of the act of the insured, in either of the four written points upon which it was requested to charge the jury. Neither in answer to the points, nor in the general charge, was there any allusion to his comprehension of the moral aspect of the case. The court was considering the distinction of the physical life only of the insured. It was his physical life only that was covered by the policy of insurance. That was the only life, in the meaning of the contract that had been destroyed. The question which arose and which was considered by the court and jury, was whether he had sufficient mental capacity to comprehend intelligently that the act which he was about to commit would for ever destroy that life. Bearing in mind then that this was the subject-matter covered by the insurance, and that it was for the loss of this alone the action was brought, we will consider that portion of the charge specially assigned for error. It is this, " If at the time the pistol was fired, Isett was conscious of the act he was committing, and intended to take his life, and had sufficient mental capacity to comprehend and understand the nature and consequences of his act; then the defendants are not liable. If, on the other hand, he was not thus conscious, but acted under an insane impulse or delusion sufficient to impair his understanding or will, or if his reasoning power was so far overthrown by his mental condition, that he was incapable of exercising his judgment in regard to the consequences, then the defendants are liable." We understand the fair import of this instruction to be this, to wit : if the insured possessed sufficient mental capacity to form an intelligent intent to take his own life, and was conscious that the act he was about to commit would effect that object, it avoided the policy. If, however, his mind was so far impaired that he was incapable of forming such an intent, and was unconscious of the effect of his action, upon his life, a recovery could be had. So under-

[American Life Insurance Co. v. Isett's Adm'rs.]

standing it, we cannot say there is any error therein. Upon a careful examination of the whole charge we discover nothing to change the general effect of the portion quoted. As no particular instructions were asked for, in regard to the moral nature and consequences of the act, the court is responsible for the general effect only of the charge. We will not draw upon our imagination to uncover anything beneath the reasonable and probable import of the charge. If taken as a whole, it was not calculated to mislead the jury, it is not error. Nor is the mere omission to charge upon a point to which the attention of the court was not called, cause for reversal: Raush v. Miller, 12 Harris 277; Weamer v. Juart, 5 Casey 257; Reeves v. Del., Lack. & West. R. R. Co., 6 Id. 454; Newman et al. v. Edwards, 10 Id. 32.

This view of the case makes it unnecessary to consider the conflicting authorities as to whether a policy is made void, if the insured comprehended the physical nature and consequences only of the act, and intended to destroy his life, although he did not comprehend its moral nature; or whether he must also have comprehended its moral character. As this distinction does not fairly arise in this case, and its consideration might involve us in an unprofitable discussion of the influences of different systems of theology, we refrain from expressing any opinion on it.

The case of Hartman v. Keystone Ins. Co., 9 Harris 466, is not in conflict with the charge of the court. It merely holds that if the insured committed suicide by swallowing poison, he died by his own hand. It does not profess to hold that self-destruction by the insured, in all cases, avoids the policy.

The charge of the court substantially covers all the points submitted by the plaintiff. We do not think the learned judge erred therein. Therefore the judgment is affirmed.