Louisa Tritschler, Administratrix of the Estate of Fidel Tritschler, deceased, Appellant, *v.* The Keystone Mutual Benefit Association.

*Insurance—Life insurance—Death by suicide—Insanity.*

No recovery can be had upon a policy of life insurance where the insured has killed himself while insane, if it is a condition of the policy that it shall be void in case the person whose life is insured "shall die by suicide, feloniously or otherwise, sane or insane."

Argued, Feb. 2, 1897. Appeal, No. 31, Jan. T., 1897, by plaintiff, from judgment of C. P. Lehigh Co., Sept. T., 1896, No. 50, for defendant on demurrer to statement. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of life insurance.

Plaintiff's statement averred: "That the said Fidel Tritschler [the insured] died on the tenth day of March, A. D. 1896, by his own hand, by shooting himself while insane, and while by reason of such insanity he was not responsible for his acts and conduct."

The material portion of the policy was as follows:

"3. It is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured upon these express conditions, that in case the said person whose life is hereby insured shall, without the consent of this association (previously obtained in writing and signed by the president or secretary), pass either by sea or land beyond the settled limits of the United States and the Dominion of Canada, or shall visit, between the first of July and the first of November, those parts of the United States which lie south of the thirty-second degree of north latitude, or shall reside during the said time south of 36° 30′ north latitude at any place within 30 miles of the Mississippi or Red river, or shall enter into any military or naval service whatsoever (the militia not in actual service excepted), or shall be personally employed as an engineer or fireman in charge of a steam engine, or as an officer or employee upon any railroad train or steam vessel, or in the manufacture or trans-

portation of gunpowder, or other highly explosive substance, or in blasting or mining operations, or shall enter upon any aerial voyage, or in case he or she shall die by suicide, feloniously or otherwise, sane or insane, or in consequence of an attempt to commit suicide, or by the hands of justice, or in the known violation of any law of any of these states, or of the United States, or of any state or county, or in the consequence of a duel or by disease, violence or accident brought about by intoxication; or in case he or she shall be imprisoned by due process of law for at least six consecutive months, this policy shall be null, void and of no effect."

The defendant demurred to the statement. ALBRIGHT, J., filed the following opinion:

This is an action by the administratrix of Fidel Tritschler, deceased, to recover from the Keystone Mutual Benefit Association of Allentown $5,000 which it is alleged is due under a policy insuring said deceased. The policy provides that it is declared to be the true meaning of the policy, and the same is accepted by the assured upon the express condition, that in case the person whose life is insured shall die by suicide, feloniously or otherwise, sane or insane, or in consequence of an attempt to commit suicide, the policy shall be null, void and of no effect. Plaintiff's statement avers that Fidel Tritschler, upon whose life the policy was granted, died on May 10, 1896, by his own hand, by shooting himself while insane, and while by reason of such insanity he was not responsible for his acts and conduct; further that he, by reason of said insanity, was unconscious of the moral and physical consequences of his acts and conduct at the said time of his shooting himself. To this statement defendant has demurred, alleging that the statement shows that the insured violated the essential provisions of his contract; that no sufficient legal cause of action is set forth in the statement.

It is settled in this state that a policy of insurance which provides that it shall be void if the insured shall die by suicide is not forfeited by the insured destroying himself, he being insane at the time but intending to take his life and knowing that death would result from the act. The ground upon which said conclusion rests is that in legal acceptation

and in popular use the word suicide is employed to characterize the crime of self-murder; that self-destruction under insane impulses so strong as to be beyond the control and restraint of the will is a result produced by disease, for which the victim of it is no more morally responsible for it than he would be for any other of the maladies of which men die: Connecticut Life Insurance Co. v. Groom, 86 Pa. 92. The rule recognized in said case prevails in perhaps all the states of the Union where the question has arisen, and also in the United States courts: Newton v. Mutual Co., 76 N. Y. 426; Life Ins. Co. v. Terry, 15 Wal. 580; Bigelow v. Berkshire Ins. Co., 93 U. S. 284. The reason for the rule elsewhere has been expressed thus: " Self-destruction of a fellow being bereft of reason can with no more propriety be ascribed to the act of his own hand than to the deadly instrument that may have been used by him for the purpose: " Breasted v. Farmers' Trust Co., 4 Hill (N. Y.), 73; Manhattan Ins. Co. v. Broughton, 109 U. S. 121. And as illustrated by an English chancellor: " The deceased was subject to that which is really just as much an accident as if he had fallen from the top of a house: " Horn v. Australian Ins. Co., 30 Law Jour. Ch. 511. That rule was applied to cases where the policies did not stipulate for nonliability if the insured committed suicide while sane or insane. Where there is such stipulation the authorities are almost uniformly to the effect that such provision is binding even if the act of self-destruction was the result of insanity: Pierce v. Travelers' Ins. Co., 34 Wis. 389; DeGogorza v. Knickerbocker Ins. Co., 65 N. Y. 232; Travelers' Ins. Co. v. McConkey, 127 U. S. 661. As was said in said case of Pierce: " The intention here manifested is so plain as to seem incapable of further explanation, and unless there is something in the policy of the law which forbids such stipulation we have nothing to do but to give it effect." Neither in that nor any other adjudicated case that this court is aware of, nor in the learned and exhaustive argument of plaintiff's counsel, has it been demonstrated that such limitation of liability contravenes any rule that the good of the public requires. As has been said, if a man, by reason of irresistible impulse the result of mental aberration, takes his own life it is as much an accident and a matter beyond his control as if his death was caused by smallpox, scarlet fever or the accidental fall from the top of a house. But what plaus-

ible argument could be advanced that a stipulation in a policy excluding liability for death owing to said specified diseases or cause was invalid? Who doubts the validity of the very frequent exclusion from the risk of death occasioned by employment on railroad trains, the high seas, about explosives, dwelling in tropical countries and the like? A sane person, while contracting for insurance upon his life or against accident not resulting in death, may agree to any limit of causes of death or injury he sees fit, so long as no immorality is involved. It is to be presumed that the price of insurance is affected by the extent of the risk of the insurer. Where the consequences of certain maladies, whether mental or physical, are excepted from the insurance, naturally the premium, dues or assessments are lower.

The able argument of plaintiff's counsel, fortified by citation of many legal authorities, has for its object the establishment of the principle that where the self-killing was unintentional because of insanity, where by reason of insanity the suicide was unconscious of the moral and physical consequences of his acts and conduct, there the insurer shall be liable notwithstanding a covenant that the policy shall be void in the event of suicide, while the insured is insane. It is urged that it would be contrary to the policy of the law to uphold a contract for non-liability under those conditions. The court cannot assent to said contention for reasons already indicated.

November 2, 1896, upon the demurrer judgment is given for the defendant.

*Error assigned* was in entering judgment for the defendant upon the demurrer.

*John Rupp*, for appellant.—If a policy of insurance be obscure in its meaning it must be construed, as between the parties, most strongly against the insurance company which issued it: Grandin v. Ins. Co., 107 Pa. 26 ; Ins. Co. v. Mund, 102 Pa. 89; Burkhard v. Ins. Co., 102 Pa. 262; Life Ins. v. Drach, 101 Pa. 278; Ins. Co. v. Cropper, 32 Pa. 351.

The term "suicide" has acquired a technical legal meaning. It does not mean self-destruction in its general sense, but self-destruction by one possessed of his mental faculties, wilful self-destruction by one knowing the moral and physical consequences of his act at the time: Bouvier's Law Dictionary, Title Sui-

cide; Breasted v. Farmers' Trust Co., 4 Hill, 75; American Life Ins. Co. v. Isett, 74 Pa. 176; Conn. Mut. L. Ins. Co. v. Groom, 86 Pa. 92; Mayer v. Isaac, 6 M. & W. 612; Notman v. Anchor Asso. Co., 4 C. B., N. S. 481; Mut. Life Ins. Co. of N. Y. v. Terry, 15 Wallace, 580.

Our contention is that the proper construction of this condition of the policy is, that the self-destruction, in order to avoid the policy, must have been committed knowingly, wilfully and intentionally, although the deceased may not at the time, by reason of insanity, or by reason of insane impulses or delusions, have been conscious of the moral consequences of his act. He must, however, have known the physical consequences of his act at the time and must have intended to take his life: Salentine v. Mut. Benefit Life Ins., 24 Fed. Rep. 159; Adkins v. Columbia Life Ins. Co., 70 Mo. 27.

*Edward Harvey*, for appellee, was not heard, but in his printed brief said.—The legal effect of a clause " die by his own hand " or " die by suicide " is to release the insurer only when it is shown that the insured, at the time of the self-destruction, was not insane: American Life Ins. Co. v. Isett, 74 Pa. 176; 24 Am. & Eng. Ency. of Law, 490; Dean v. Ins. Co., 4 Allen, 96; Borrodaile v. Hunter, 5 Mann. & G. 639; Clift v. Schwabe, 3 Mann. Gr. & S. 437.

In the case under consideration the words are " feloniously or otherwise, sane or insane." These comprehensive words include all forms of voluntary, as distinguished from accidental, self-destruction; and they exclude all elements of mental and moral responsibility: Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284; Riley v. Hartford L. & A. Ins. Co., 25 Fed. Rep. 315; Navigation Co. v. Moore, 2 Wharton, 491; De Gogorza v. Knickerbocker Life Ins. Co., 65 N. Y. 232; Chapman v. Republic Life Ins. Co., 6 Bliss. 238; Travelers' Ins. Co. v. McConkey, 127 U. S. 661; Penfold v. Universal Life Ins. Co., 85 N. Y. 317; Richardson v. Mellish, 2 Bing. 229; Van Zandt v. Ins. Co., 55 N. Y. 176.

PER CURIAM, February 22, 1897:

The judgment in this case is affirmed on the opinion of the learned court below.