# Krebs *v.* Philadelphia Life Insurance Co., Appellant.

*Insurance—Life insurance—Construction of policy—Strict construction—Suicide clause—Date of policy.*

1. Where there is an ambiguity in the conditions of a policy of insurance its provisions will be construed most strongly against the insurer and in favor of the insured.

2. Where a policy of life insurance, dated Oct. 1, 1913, but issued August 1, 1913, contained an endorsement signed by the insurance company's secretary stating that "the amount insured by this policy will be carried as term insurance from August 1, 1913, to October 1, 1913," and provided that the suicide of the insured "within one year of the date hereof is a risk not assumed by the company," and that the policy should be incontestable, "except for nonpayment of premiums after one year from its date," the one year period relating to suicide was properly computed from the date when the term insurance began, not from the date of the policy, and the suicide of the insured on August 24, 1914, did not defeat recovery thereon.

Argued March 30, 1915. Appeal, No. 13, Jan. T., 1915, by defendants, from judgment of C. P. No. 2, Philadelphia Co., Sept. T., 1914, No. 2511, for plaintiff for want of a sufficient affidavit of defense in case of William G. Krebs and John F. Krebs v. Philadelphia Life Insurance Company. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit on policy of life insurance.

The opinion of the Supreme Court states the case.

The court below made absolute plaintiff's rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was in entering judgment for plaintiff for want of sufficient affidavit of defense.

*Russell Duane,* of *Duane, Morris & Heckscher,* for appellant.

*T. Henry Walnut,* of *Foss, Walnut & Faught,* for appellee.

OPINION BY MR. JUSTICE FRAZER, May 3, 1915:

The policy of insurance on which this action was brought was issued upon the application of plaintiffs' father, bearing date July 19, 1913. The policy is dated October 1, 1913, but contains on the top of the third page, written in ink and signed by the secretary of defendant company, the following memorandum: "In consideration of the payment of nine and 76-100 dollars in advance the amount insured by this policy will be carried as term insurance from August 1, 1913, to October 1, 1913. At the request of the insured the premiums hereon are changed to quarterly installments of forty-nine and 96-100 dollars each, payable on the first day of October, January, April and July in each year thereafter during the continuance in force of this policy."

It appears the policy was actually delivered on or before August 1, 1913, and the above clause incorporated for the purpose of protecting the insured in the meantime and until the actual date of the original policy, in accordance with the general practice among insurance companies, by which persons desiring insurance and not having the funds on hand to pay the premium immediately are enabled to take out the policy and protect themselves for a short time at a lower rate which provides "term insurance." This ar-

rangement is advantageous to both the company and the insured, as it closes the transaction immediately which might otherwise not be finally completed. The policy also contains a provision that "self-destruction while sane or insane, within one year of the date hereof, is a risk not assumed by the company under this policy"; and, a further provision that "this policy shall be incontestable, except for nonpayment of premiums after one year from its date." The insured committed suicide on August 24, 1914, and the question now arises whether this action on his part avoided the policy under the above provisions. The question depends upon whether or not the date of the policy is to be counted from the date of the printed form or from that of the written clause. If the former is accepted, the company is not liable, but if the latter is adopted, then the required year had expired before the death of the insured, and the beneficiaries are entitled to recover. The court below held the policy was effective from August 1, 1913, and that the year began to run at that time.

It will be noted the written stipulations do not constitute a complete contract of insurance, nor does the written part attempt to incorporate in its provisions enough of the terms of the printed contract to make it a completed agreement under the rule of incorporation by reference. If, however, it should be construed to do so, then it must be held to incorporate all the provisions of the original policy not expressly changed by the written part. Whether the contract be considered as the written part with the printed policy incorporated by reference, or the printed policy supplemented by the change made in the written part, in either case it is necessary that both written and printed parts be construed as a whole to make a complete and valid contract of insurance within the provisions of the Act of June 1, 1911, P. L. 581, requiring such contracts to contain certain provisions therein stated.

Considering the printed policy and written part as

one contract, the effect is to change the time at which the policy is to take effect from October 1st, to August 1st, also to change the method of payment of premiums to quarterly installments instead of yearly payments. In all other respects the contract was in full force on August 1st, unless the phrase "term insurance" must be construed as meaning something further than a mere expression governing the duration of the existence of the policy. The question, therefore, is whether by this expression it must necessarily have been understood by the parties that the insurance in force during the period from August 1st to October 1, 1913, meant something different from the terms of the policy on which the written stipulations were transcribed.

As pointed out above, it was necessary, in order to constitute a complete contract of insurance, that at least some terms of the printed policy should be incorporated in the insurance stipulation for the two months' term. If any of these were necessary, why not all, except such as were expressly excluded? Where can the line be drawn? It certainly cannot be contended that only those provisions favorable to the company should be incorporated, while those beneficial to the insured should be excluded. The language used by this court in Francis v. Prudential Insurance Company, 243 Pa. 380, is applicable. The policy there provided that if it were allowed to lapse and not be surrendered, the company would write a paid-up policy for the full amount for a certain term, and it was contended by the company that the insured was not entitled to a paid-up policy for the full term specified without deduction for such time as would cancel actual loans made by the company to the insured. In that case Justice ELKIN said (p. 589) : "It is argued, earnestly and forcefully, that the insured was only entitled to an extended term of five years and seventy-eight days on condition of his being free from indebtedness to the company on account of the policy at the date of the lapse. The answer to this contention is

that the policy contains no such provision, and in order to reach such a conclusion it is necessary, not only to ignore the plain words of the contract, but to read into it, by way of construction, the ex parte understanding of the insurer without anything in the policy to indicate what that understanding was and without notice to the insured that the true intent of the parties was not fully expressed in the clear language of their contract. If the plain and unambiguous terms of the contract in the present case mean anything, it is, as held by the learned court below, that the insured was entitled to an extended term of five years and seventy-eight days......We cannot agree that the term of extended insurance is affected by the loan provisions of the policy, which do not in terms, nor as we view it by necessary implication, have reference to the table of extended insurance. If appellant intended to reduce the term of extended insurance on account of loans to the insured, it would have been an easy matter to have so provided in the policy, and the inference from its failure to do so is that it did not so intend. The policy is in the language of the insurance company and the presumption is that its express provisions contain all the conditions intended to be imposed. Certainly the insured had the right to assume that the policy meant what it said, and that conditions not expressed did not exist."

The above language is particularly applicable here. It would have been an easy matter for the insurer to insert a provision to the effect that the date of the original policy should apply so far as the suicide clause was concerned, or that there was no exemption from suicide in the term policy. This was not done and neither is there anything to show that a term policy meant something different from the contract, which was set forth in the printed form. The burden of showing this was on defendant under the well settled rule that where there is an ambiguity in the conditions of a policy of insurance

its provisions will be construed most strongly against the insurer and in favor of the insured.

There was no error in holding the policy was in force with all its provisions from August 1, 1913.

The assignments of error are overruled and the judgment affirmed.