Allegheny Trust Co. *v.* State Life Ins. Co., Appellant.

38

Argued April 28, 1933.

Before TREXLER, P. J., KELLER, CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*James Milholland,* and with him *Alter, Wright &
Barron,* for appellant.—Public policy forbids the in-
sertion in a contract of insurance a condition which
would tend to induce crime: Wells v. Insurance Com-
pany, 191 Pa. 207; Ritter v. Mutual Life Insurance

Co., 169 U. S. 193; Burtt v. Union Central Life Insurance Co., 187 U. S. 362.

*John W. Cost,* for appellee, cited: Robinson v. Metropolitan Life Insurance Co., 69 Pa. Superior Ct. 274.

OPINION BY KELLER, J., July 14, 1933:

This was an action of assumpsit on a life insurance policy, tried by a judge of the county court, without a jury. The insured, Lazzaro A. Romanin, on May 2, 1922, took out the policy on his own life, naming his wife, Caterina Romanin, as the beneficiary, if living; otherwise payable to the insured's executors, administrators or assigns. The policy provided that the insured had the right to change the beneficiary; that it was incontestable after one year, except for non-payment of premiums; and that, "Should the insured, whether sane or insane, die by his own hand or act, within one year from the date hereof, the liability of the company shall be limited to the amount of premiums paid hereon."

On August 29, 1930, the insured and his wife were found dying in a room of the house in which she was living. The circumstances indicated that he had shot her and then shot himself. They died simultaneously a few minutes later. They had been separated for several months and he had suffered a nervous breakdown. The administrator of the insured's estate brought suit on the policy. The defense set up was that a recovery on the insurance contract would be against public policy.

The proofs of death filed by the plaintiff, and offered in evidence by the defendant, set forth that the insured had died from a gunshot wound in the head. The certificate of death filed in the Bureau of Vital Statistics at Harrisburg stated that the cause of death was "Gunshot wound of head—suicide."

The defendant also offered in evidence the proofs of death filed by the Allegheny Trust Company as administrator of the estate of Caterina Romanin, in connection with a policy of insurance, of the same company, on her life,—which had been paid—, wherein it was stated that she was "murdered;" and the certificate of death filed in the Bureau of Vital Statistics, in which the cause of her death was stated to be "Gunshot wound of head—murder."

Strictly speaking, the papers offered in connection with the death of Caterina Romanin were not admissible in this case. The fact that the same corporation happened to be administrator in both estates did not have the effect of making a statement by it in the proof of death of the one intestate operate as an admission of the responsibility of the other intestate for that death, in a suit on a different policy of insurance. The statement was made by it while acting as administrator of the wife's estate and could not be held to operate as an admission affecting the estate of the husband, just because it was also administrator of his estate. It was acting in two different representative capacities—as much so as if there had been two different administrators. The certificate of Caterina Romanin's death was competent evidence of the fact of her death but it is at least questionable whether it was competent or relevant evidence of the cause of her death: Borgon v. John Hancock Mut. Life Ins. Co., 99 Pa. Superior Ct. 377, 382, 383, 384; and it was not, we think, where, as here, the action was between entirely different parties, and the certificate had not been furnished by this plaintiff: Wilmer v. Industrial Health, Accident & Life Ins. Co., 101 Pa. Superior Ct. 366, 369.

In any event, it was not conclusive, (Borgon v. John Hancock Mut. Life Ins. Co., supra,), and the trial judge was not bound to accept the statement in the Caterina

Romanin proof of death, giving the cause of death as "murder," as requiring him to find that Lazzaro Romanin, her husband, had "murdered" his wife, using that term in its strict legal signification, and meaning that he was at the time of the killing, 'of sound memory and discretion,' and that he did it 'with malice aforethought, express or implied,' when there were other circumstances in the case to lead him to a different conclusion.

The trial judge, who was the trier of fact, and had the same function and prerogative as a jury, was not able to find from all the evidence that Lazzaro Romanin, at the time he shot his wife and himself, was of sound memory and discretion and that the shooting was with malice aforethought. On the contrary he concluded that "A careful examination of the entire testimony and a careful consideration of all of the facts and circumstances leading up to and surrounding the dual tragedy, the lack of any sane motive for the killing, which was immediately followed by suicide, leads us to the conviction that the tragedy was the result of the abnormal action of a deranged, disordered, and irresponsible mind and that the plea of non-responsibility on the part of the defendant on the ground of public policy should not prevail."

There was evidence in the case to support this finding and we are not convinced that it was so clearly erroneous, as to require us to set it aside, especially after it has been affirmed by the court in banc.

We are not to be understood as assenting to the proposition that even if Lazzaro Romanin had *murdered* his wife, using that term in its strict legal signification, there could be no recovery on the policy.

The cases relied on by the appellant do not, in our opinion, support its contention. This court held in Collins v. Metropolitan Life Ins. Co., 27 Pa. Superior Ct. 353, that the executor of the will of an insured,

who was *executed for murder,* could not recover the amount of the policy from the insurance company, although it was payable to his legal representatives. This, on the ground of public policy alone, and not out of consideration for the insurance company; that an ordinary life policy containing no applicable special provisions, will not be held to be a contract insuring against a legal execution for crime. In Robinson v. Metropolitan Life Ins. Co., 69 Pa. Superior Ct. 274, the policy which was an endowment one, payable to the insured, Elmer Freeney, when he reached a certain age, contained a provision that in case of his death before reaching that age the company might "pay the amount due to either the beneficiary named below or to the executor, or administrator, husband or wife, or any relative by blood or connection by marriage of the insured," etc. The beneficiary named was his wife, Mary F. Freeney. Before the insured reached the age fixed for the payment of the policy to him, he was feloniously killed by his wife. We held that while Mrs. Freeney had disqualified herself to become the beneficiary and could not maintain an action on the policy, the policy contract could be enforced in an action brought by the administrator of the insured's estate. It was that case which led the insurance company to pay the policy on Caterina Romanin's life of which Lazzaro Romanin was the named beneficiary, in a suit brought by the administrator of her estate. That case comes more nearly within the ban against recovery on the ground of public policy than this one. The other insurance cases relied on by the appellant (Burt v. Union Central Life Ins. Co., 187 U. S. 362; Smith v. Metropolitan Life Ins. Co., 211 N. Y. Supp. 755) tend to establish one or more of the following propositions: (1) That the beneficiary of a life insurance policy who murders the insured may not recover in an action on the policy

(See Robinson v. Metropolitan Life Ins. Co., supra); (2) that where the insured commits suicide while sane, (American Life Ins. Co. v. Isett, 74 Pa. 176; Conn. Mut. Life Ins. Co. v. Groom, 86 Pa. 92), and the policy has no specific provision on the subject, neither the estate nor a beneficiary having no vested interest may recover on the policy;—(But in Pennsylvania the beneficiary may recover: Morris v. State Mut. Assurance Co., 183 Pa. 563, 39 Atl. 52; White v. Empire State Degree of Honor, 47 Pa. Superior Ct. 52); (3) that where the insured is executed for crime, and the policy has no specific provision on the subject, neither his estate, (Collins v. Metropolitan Life Ins. Co., supra), nor a beneficiary having no vested interest, may recover on the policy; the ground of the decision being that a policy of life insurance which is silent on the point does not cover death by the hand of the law: Northwestern Mut. Life Ins. Co. v. McCue, 223 U. S. 234.

The cases relied on by the appellant would apply to this case if the insured, Lazzaro Romanin, had been tried, convicted and *executed* for the murder of his wife. But he was not. And they would likewise apply if the policy had been silent on the subject of suicide, or had provided that the contract should be void if the insured committed suicide, sane or insane, without limitation of time. (See Starck v. Union Central Life Ins. Co., 134 Pa. 45, 19 Atl. 703; Hall v. Mutual Reserve Fund Life Assn., 19 Pa. Superior Ct. 31; Tritschler v. Keystone Mut. Ben. Assn., 180 Pa. 205, 36 Atl. 734). But it did not. It provided that if the insured, whether sane or insane, committed suicide within *one year from the date of the policy*, the liability of the company should be limited to the amount of premiums paid thereon. This amounted to a recognition of full liability if the insured committed suicide after one year. Such a contract provision is legal

and not against public policy: Krebs v. Phila. Life Ins. Co., 249 Pa. 330, 332, 95 Atl. 91. Hence the suicide of Lazzaro Romanin did not avoid the policy. To assert that the policy is avoided because by killing the beneficiary, specially named therein, his estate was substituted as the beneficiary, overlooks the fact that in this case the insured had the right, definitely reserved in the policy, himself to change the beneficiary at any time.

To conclude that the insured killed his wife in order to do what he could have accomplished by notifying the company of his desire to change the beneficiary is too absurd to require any discussion. And a denial of liability on the ground of public policy, based on such a premise, as respects a contract of insurance on his own life, is carrying the doctrine far beyond its limits as recognized in this State.

The killing of the wife initiated no claim whatever upon the policy on the husband's life; it was his suicide which made the policy payable; and, as we have seen, a contract permitting a recovery on the policy in case of suicide after one year of its issue, is not against public policy in this State: Krebs v. Phila. Life Ins. Co., supra. See also, Elwood v. New England Mut. Life Ins. Co., 305 Pa. 505, 512, 158 Atl. 257.

The assignment of error is overruled and the judgment is affirmed.