LaReita BLUMENSCHEIN, Plaintiff,

v.

**SECURITY CONNECTICUT LIFE INSURANCE COMPANY, a corporation, Defendant.**

Civ. A. No. 83–318.

United States District Court, W.D. Pennsylvania.

May 24, 1984.

Daniel M. Berger, Michael Louik, Pittsburgh, Pa., for plaintiff.

John H. Scott, Jr., Pittsburgh, Pa., for defendant.

MEMORANDUM

McCUNE, District Judge.

In this diversity action we consider plaintiff's motions for judgment notwithstanding the verdict and for a new trial. For the reasons that follow, the motions will be denied.

*Facts*

Plaintiff, LaReita Blumenschein, was the beneficiary under a policy insuring the life of her husband, Ronald Blumenschein deceased. The insurance policy was a de-

clining term policy designed to pay the balance of a mortgage. The monthly premiums decreased each year, as did the face amount of the policy. It was issued on April 8, 1977.

Ronald Blumenschein died March 4, 1979. Plaintiff testified to the following facts concerning her husband's death. Mr. Blumenschein walked from their apartment building to a storage shed near their home to retrieve a medicine chest that he was going to install in one of the apartments in the building. While Mr. Blumenschein was in the shed, Mrs. Blumenschein received a telephone call that required her husband's attention. She went to the shed and saw that the doors were closed. Upon entering, plaintiff observed her husband's shirt and called to him, while continuing to make her way to him. She found her husband hanging from the rafters of the building, suspended by a nylon rope. She called the police and an ambulance, and acting upon the police dispatcher's advice, cut the rope so that her husband fell to the ground. The police arrived shortly thereafter.

The police chief testified that he did not conduct an extensive investigation because there was nothing to indicate the occurrence of foul play. The coroner testified similarly. Both men opined that Mr. Blumenschein committed suicide.

The insurance policy involved herein contains a provision captioned SUICIDE (hereinafter suicide clause). It provides,

> In event of suicide of the Insured, while sane or ,insane, within two years from the Issue Date, the amount payable by the Company shall be limited to the amount of premium paid.

Defendant, Security-Connecticut Life Insurance Company, refused to honor plaintiff's claim, based upon the above-quoted provision of the policy. Plaintiff raised the issue at trial that the defendant had failed to prove by a preponderance of the evidence that the death was due to suicide. There was a defense verdict.

1. Counsel has not provided a trial transcript. Therefore, we rely upon our recollection in dis-

## Motion for Judgment N.O.V.

Plaintiff asserts, in support of this motion, that the suicide clause violates the public policy of Pennsylvania, therefore judgment should be awarded in her favor. Specifically, plaintiff argues that the two year time limit is arbitrary and unreasonable, and bears no relation to the insurance company's interest in protecting itself from an insured who purchases life insurance while contemplating suicide.

In considering a motion for judgment n.o.v. the court must proceed cautiously, and such motion should be granted sparingly. *Marian Bank v. Intern. Harvester Credit Corp.*, 550 F.Supp. 456 (E.D. Pa.1982), *affirmed*, 725 F.2d 669 (3d Cir. 1983). "The jury's verdict may be set aside only if manifest injustice will result if it were allowed to stand." *Id.*, at 460. The motion may be granted only when there is but one reasonable conclusion as to the proper judgment, without weighing the credibility of the evidence. *Woodward and Dickerson, Inc. v. Yoo Hoo Beverage Co.*, 502 F.Supp. 395 (E.D.Pa.1980), *affirmed*, 661 F.2d 916 (3d Cir.1981); 5A *Moore's Federal Practice*, ¶ 50.07[2] at 50–76, 50–77 (2d ed. 1982). There is no disagreement between the parties that Pennsylvania substantive law applies in this diversity action. *Daburlos v. Commercial Ins. Co. of Newark, N.J.* 521 F.2d 18 (3d Cir. 1975).

Prior to trial we held an unrecorded conference with counsel, during which we ruled, *inter alia*, that the inclusion of a suicide clause in a policy of life insurance does not violate the public policy of the Commonwealth of Pennsylvania. During a side bar at trial, we placed on the record our pretrial ruling.[1] Thereafter, at the close of defendant's case, plaintiff moved for a directed verdict based upon her public policy argument. We denied the motion.

posing of plaintiff's motions.

■ Plaintiff's argument is primarily based upon *Burne v. Franklin Life Ins. Co.*, 451 Pa. 218, 301 A.2d 799 (1973). In *Burne* the Supreme Court of Pennsylvania ruled that an insurance policy which provided that accidental death benefits would be payable only if death occurred within 90 days of the date of the accident was unenforceable and contrary to public policy.

We do not believe *Burne* controls the issue in this case. Rather, we conclude that Pennsylvania case law, although not recent, is clear on this issue. The Pennsylvania Supreme Court in *Tritschler v. Keystone Mut. Ben. Ass'n.*, 180 Pa. 205, 36 A. 734 (1897), *affirmed per curium*, the conclusion that a suicide clause does not violate public policy.

More recently, in *Longenberger v. Prudential Ins. Co. of America*, 121 Pa.Super. 225, 183 A. 422 (1936), *allocatur denied*, the Superior Court of Pennsylvania discussed the reasons for including a suicide clause in a policy of life insurance.

> In fixing one year (or two years, as the case may be) as the period within which the insured's suicide, whether sane or insane, should not create a cause of action on the policy, the insurers adopted the year or two thus chosen as the extreme limit of time that a person would probably take out life insurance with the intent of killing himself in order to benefit his family or his creditors at the expense of the insurance company; and by necessary implication they agreed thereby that suicide of the insured, sane or insane, after the expiration of this period of time, was not contemplated by him at the time the insurance was taken out and would not be fraud on the company; and that they would regard suicide after that length of time as one of the hazards covered by the policy.

*Id.*, at 232, 183 A. at 425. The court held "that such a clause is not contrary to public policy in this state whether the policy is payable to a named beneficiary or to the insured's estate." *Id.*, at 427, 183 A. 427. *See also Allegheny Trust Co. v. State Life Ins. Co. of Indianapolis, Ind.*, 110 Pa.Super. 37, 167 A. 251 (1933).

Plaintiff advances a conclusory argument that "within the common experience of reasonable people, a person who contemplates suicide at the time of the purchase of an insurance policy does not wait 23 months to commit the act." Plaintiff's brief at 5–6. The cases cited above adequately address not only the evolution of suicide clauses in policies of life insurance, but also their validity in the face of public policy argument. "[I]t [has not] been demonstrated that such limitation of liability contravenes any rules that the good of the public requires." *Tritschler v. Keystone Mut. Ben. Ass'n, supra.*

Actually, the *inclusion* of suicide clauses in policies of life insurance *began* because of public policy considerations. The Supreme Court, in *Ritter v. Mutual Life Ins. Co.*, 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693 (1898), quoted from a treatise popular at that time.

> It [allowing one contemplating suicide to insure his life] would render those natural affections which make every man desirous of providing for his family, an inducement to crime; for the case may be well supposed of a person insuring his life for that purpose, with the intention of committing suicide. For a policy, moreover, to remain in force when death arose from any such cause would be a fraud upon the insurers.

*Id.*, at 159–60, 18 S.Ct. at 307. The Court later referred to the above-described rule as one arising from public policy. Pennsylvania law being settled on this issue, plaintiff's motion for judgment n.o.v. will be denied.

### Motion for New Trial

■ This court ruled before trial, and reaffirmed at trial, that plaintiff could not proffer evidence that the suicide clause had not been explained to Mr. Blumenschein at the time he purchased the life insurance policy, as required by *Hionis v. Northern Mutual Ins. Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974) (hereinafter *Hionis*).

Plaintiff now argues that this ruling was error.

We based our decision on the then recent Pennsylvania Supreme Court case, *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983). The trial court in that case had determined that the policy of insurance involved therein, contained two exclusions that were plain and free of ambiguity. Relying upon *Hionis*, the trial could ruled that the exclusions were unenforceable because they had not been identified and explained to the insured. A panel of the superior court affirmed, also on the authority of *Hionis*.

The supreme court reversed and directed that *Hionis* should not be followed. The court stated,

> We believe that the burden imposed by *Hionis* fails to accord proper significance to the written contract, which has historically been the true test of parties' intentions. By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, *Hionis* makes the question of the scope of insurance coverage in any given case depend upon how a factfinder resolves questions of credibility. Such a process, apart from the obvious uncertainty of its results, unnecessarily delays the resolution of controversy, adding only unwanted costs to the cost of procuring insurance. Thus, *Hionis*, which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance contract, is not to be followed.

*Id.*, at 306, 469 A.2d at 567. *See also Harrison v. Aetna Life and Casualty*, —— Pa.Super. ——, 473 A.2d 636 (1984). Plaintiff focuses on subsequent language in *Venetian Blind* where the court stated, "a court may on occasion be justified in deviating from the plain language of a contract of insurance" if the clause in question is deemed to have been unconscionable at the time it was made. *Id.*

We have noted the rationale behind the inclusion of suicide clauses in insurance policies and have discussed their value in protecting against fraud, as has been established by the Pennsylvania cases cited *supra*. Further, plaintiff has not offered any convincing argument upon which we might conclude that the suicide clause in the instant policy is unconscionable.

Plaintiff next asserts that *Venetian Blind* is inapplicable to the present case because, she suggests, the insurance policy here was executed only by defendant, unlike the policy in *Venetian Blind*. Plaintiff makes this assertion in general terms without supporting argument and without reference to applicable law.

■ We agree with defendant that both parties executed the instant policy. Mr. Blumenschein signed an application for insurance which was incorporated in the body of the insurance policy, as is permitted by 40 P.S. § 441. That provision provides, in pertinent part,

> § 441. When application, constitution, by-laws, and rules are considered part of policy
>
> All insurance policies ... in which the application of the insured ... form[s] part of the policy or contract between the parties thereto, or [has] any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application as signed by the applicant ... and, unless so attached and accompanying the policy, no such application ... shall be received in evidence ... nor shall such application ... be considered a part of the policy....

The Pennsylvania Superior Court has noted, "The general rule is that the application becomes a part of the agreement between the parties and, taken together with the policy when issued, constitutes the insurance contract." *Murray v. John Hancock Mutual Life Ins. Co.*, 165 Pa.Super. 514, 69 A.2d 182 (1949), *allocatur denied*. The Supreme Court of Pennsylvania has ruled that 40 P.S. § 441 must be strictly complied with in all respects. *Syme v. Bankers National Life Ins. Co.*, 393 Pa. 600, 144 A.2d 845 (1958), citing, *Ellis v.*

*Metropolitan Life Ins. Co.*, 228 Pa. 230, 77 A. 460.

We received in evidence plaintiff's Exhibit 1, which is the life insurance policy upon which this lawsuit is based. The application for insurance is appended thereto, and it is signed by the insured, Ronald Blumenschein. Thus, the application is part of the insurance policy pursuant to 40 P.S. § 441. There is, therefore, no merit to plaintiff's claim that the insurance policy was executed only by defendant.

■ Finally, plaintiff argues that she should have been permitted to present evidence that Ronald Blumenschein did not contemplate suicide at the time he purchased the life insurance policy. The evidence she would have offered would have been defendant's answer to plaintiff's interrogatory no. 5, wherein defendant answered "No" to the question "Do you claim that, at the time of the purchase of the policy of insurance, Ronald W. Blumenschein contemplated suicide?"

The policy of insurance is clear and unambiguous on its face. The suicide clause makes no reference to the insured's state of mind at the time the policy is purchased. Rather, it clearly and simply states that in the event the insured commits suicide within two years of the date the policy is issued, the amount payable will be the amount of premium paid. Alleged evidence of Mr. Blumenschein's state of mind at the time of purchase is thus irrelevant. "Where the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Insurance Co., supra*, at 305, 469 A.2d at 566, citing, *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). Thus, there was no error in refusing to allow plaintiff to offer evidence that the insured did not contemplate suicide when he purchased the policy of insurance.

The motion for a new trial will be denied.