Blanche J. McCartney, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 15, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Kenneth R. Alford*, with him *William R. Saul*, for petitioner.

*Jeffrey Gonick*, Assistant Counsel, for respondent.

OPINION BY JUDGE BLATT, January 11, 1983:

Blanche J. McCartney (appellant) appeals here an adjudication of the Department of Public Welfare (DPW) denying her nursing home care benefits because she owned real property with a value in excess of $1500 and because this property was allegedly not occupied by the appellant's spouse, minor child or an incompetent adult child. Section 179.82 of the Public Assistance Eligibility Manual (PAEM), 55 Pa. Code §179.82. The appellant contends that her son, Carl McCartney (Carl), is living on the property and is indeed incompetent. A hearing was held wherein the hearing examiner ruled that Carl was not incompetent, and thereby upholding the denial of assistance. An appeal to this Court followed.

As a general rule, the burden is upon the applicant for public assistance to show her eligibility for public assistance. *See Dempsey v. Department of Public Welfare*, 45 Pa. Commonwealth Ct. 121, 404

A.2d 1373 (1979).[1] And where, as here, the party with the burden of proof did not prevail before the DPW, our scope of review as to the factual findings is to determine whether or not there has been a capricious disregard of competent evidence. *Nunley v. Department of Public Welfare*, 54 Pa. Commonwealth Ct. 10, 419 A.2d 240 (1980).

The appellant argues that the findings of the hearing examiner are not supported by the record[2] and that the evidence presented leads to a conclusion opposite to that arrived at below. We note initially that our appellate review of this case is hampered by the fact that the DPW has failed to enact some type of objective standard for determining incompetency. In testimony at the hearing, it was stated by Carrie Robbins, Income Maintenance Worker III, that the PAEM does not contain a definition of incompetency, and our review of the material leads us to the same inescapable conclusion.[3] The hearing examiner, how-

---

[1] In civil adjudications, the burden would lie with the party asserting incompetence, *American Life Insurance Co. v. Isett's Administrator*, 74 Pa. 176 (1873); *Lotman v. Security Mutual Life Insurance Co.*, 478 F.2d 868 (3d Cir. 1973); in other words the party proving the existence of the fact, rather than the non-existence of the fact. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968).

[2] Although the petitioner phrased the question in terms of the substantial evidence test, we will nonetheless construe the issue raised as one of capricious disregard of competent evidence.

[3] We note that in civil adjudications, the standard is statutory. Section 5501 of the Probate, Estates and Fiduciaries Code, 20 Pa. C. S. §5501, provides this definition:

> "Incompetent" means a person who, because of infirmities of old age, mental illness, mental deficiency or retardation, drug addiction or inebriety:
>
> (1) is unable to manage his property, or is liable to dissipate it or become the victim of designing persons; or
>
> (2) lacks sufficient capacity to make or communicate responsible decisions concerning his person.

ever, had to use some form of test and, in his findings of fact, stated that the local assistance authorities found Carl not an incompetent adult child because of three factors: Carl receives Social Security checks and has not appointed a representative payee; Carl does not have a legal guardian; and Carl lives alone. Based on this last statement, the hearing examiner also found that there were no nearby relatives, which indicates to him that Carl's daily activities do not require supervision.

Reviewing these factors, we cannot say that they are supported by the evidence. The fact that Carl receives his Social Security checks in his own name is not indicative of competency. Representative payees are named for a variety of reasons, and legal incompetency is not the sole criteria.[4] In addition, Kay McCartney (Kay), the appellant's granddaughter-in-law, testified that she did not apply for a representative payee for Carl because "at the time that he got his check he was tickled to death, it was the first

---

[4] The regulation in effect at the time, concerning representative payees, 20 C.F.R. §404.1601 (1981) provides in pertinent part as follows:

§404.1601 Payments on behalf of an individual.

When it appears to the Administration that the interest of a beneficiary entitled to a payment under title II of the Act would be served thereby certificate of payment may be made by the Administration, *regardless of the legal competency or incompetency of the beneficiary entitled thereto,* either for direct payment to such beneficiary, or for his use and benefit to a relative or some other person as the "representative payee" of the beneficiary. *When it appears that an individual who is receiving benefit payments may be incapable of managing such payments in his own interest,* the Administration shall, if such individual is age 18 or over and has *not been adjudged legally incompetent, continue payments to such individual pending a determination as to his capacity to manage benefit payments and the selection of a representative payee.* (Emphasis added.)

time in 36 years that he ever had anything of his own, and I didn't want to take it away from him. He never in all his life had any money of his own. He was always under the guardian [sic] of his mother." Moreover, Kay testified uncontradicted that she handled all of Carl's financial affairs, including watching him sign his check, taking him to the bank, paying his bills, and buying his food and other necessities. As to the question of legal guardianship, it is true that, at the time in question, there was no one so appointed. Nonetheless it is also clear that a DPW employee testified that there is no requirement that Carl be declared legally incompetent.[5]

Lastly, as to the fact that Carl lived alone and did not have any nearby relatives, our review of the record reveals that this finding is simply wrong. Kay testified that Carl's sister lived only eight miles away and that the sister was in contact with Carl every day. In addition, Kay herself is only 35 miles distant from Carl and visits him at least once, sometimes twice, a week. There is ample evidence in the record that Carl is extremely dependent on his relatives. Cleaning, laundry, home repairs, finances—all are handled by his relatives. The testimony also indicates that he cooks his simple meals on a hot plate because he does not know how to operate a modern electric stove. And it is axiomatic that observations of those who see and talk with the incompetent and observe his acts and his conduct are the best evidence. *See, e.g. Urquhart Estate,* 431 Pa. 134, 245 A.2d 141 (1968). Yet, it was this type of evidence which the hearing examiner apparently ignored.

---

[5] Carl was adjudged an incompetent by the Court of Common Pleas of Venango County on November 20, 1980 and James R. McCartney was appointed guardian. The fair hearing by DPW was held on July 8, 1980.

Inasmuch as the DPW was operating without an objective standard and the evidence fails to support the examiner's findings even under the subjective standard here employed, we must reverse the order and remand for computation of benefits.

ORDER

AND Now, this 11th day of January, 1983, the order of the Department of Public Welfare in the above-captioned matter is hereby reversed, and the case remanded with instructions to compute benefits.