Statement of Facts.

134        45
19 SC    34

GEO. G. STARCK, ADMR., v. UNION C. L. INS. CO.    134        45
21 SC   437

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 14, 1890—Decided March 31, 1890.
[To be reported.]

(*a*) The eighth condition of a policy of life insurance provided that the
policy should be void if the insured should die by his own hand, whether
sane or insane; and, by the thirteenth condition, whether the insured
should reside in Ohio or elsewhere, the policy should be subject to the
provisions of § 3626 of the Ohio Revised Statutes, which section, as
quoted in the policy, was as follows:

(*b*) " All companies, after having received three annual premiums on
any policy issued on the life of any person in this state, are estopped
from defending upon any other ground than fraud, against any claim
arising upon such policy by reason of any errors, omissions, or mis-
statements of the assured in any application made by such assured on
which the policy was issued except as to age: "

1. In such case, the thirteenth condition had no effect upon the eighth sec-
tion, but related solely to defences based upon errors, omissions, or mis-
statements in the application; wherefore, the company, notwithstand-
ing the assured had paid more than three annual premiums, might set
up as a defence, to an action on the policy, the fact that the insured had
committed suicide.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
WILLIAMS, JJ.

No. 267½ January Term 1890, Sup. Ct.; court below, No. 55
December Term 1889, C. P.

On November 27, 1889, George G. Starck, administrator of
Joseph E. Starck, deceased, brought assumpsit against the
Union Central Life Insurance Company of Cincinnati, Ohio,
upon a policy for $2,000, issued October 21, 1884, by the de-
fendant company, upon the life of the plaintiff's intestate.

The plaintiff filed an affidavit of claim setting out the policy
and averring that the decedent had paid more than five annual
premiums thereon, and in all respects had complied with its
conditions; that he died on July 27, 1889, and the plaintiff,
having been duly appointed his administrator, furnished to the

Statement of Facts.

defendant proper proofs of death. The policy set out in the affidavit contained the following conditions:

" 8. That in case the insured shall die by his own hand, whether sane or insane, or in consequence of a duel, or in consequence of the violation of the laws of the United States or any nation, state or province, or shall become a drunkard, or have delirium tremens, this policy shall become null and void. . . . .

" 9. That in case of the death of the insured during or by reason of the violation of the conditions and agreements as specified above in Nos. 4, 5, and 8, this policy shall be valid for the reserve value of it, at the time of the death, calculated by the American Experience Table of Mortality, with interest at six per cent per annum, and for no greater amount.

" 10. That upon the violation of the foregoing conditions, or any of them, this policy shall be null and void, and all payments made thereon, and also all accrued surplus or profits, shall be forfeited to said company, except as provided in the foregoing ninth clause."

" 13. Whether the insured reside in Ohio or elsewhere, this policy is issued subject to the following named section of the Ohio Revised Statutes: 'Section 3626. All companies, after having received three annual premiums on any policy issued on the life of any person in this state, are estopped from defending upon any other ground than fraud, against any claim arising upon such policy by reason of any errors, omissions, or misstatements of the assured in any application made by such assured on which the policy was issued except as to age.' "

The defendant filed an affidavit of defence, averring that the insured, Joseph E. Starck, committed suicide on July 27, 1889, whereby he violated a condition of the policy rendering it null and void, said condition being expressed in condition 8 thereof; admitting, however, that under condition 9, the defendant was liable for the reserve value of the policy at the time of the insured's death, to wit, $74.52, but denying that the defendant owed the plaintiff, upon said policy, anything over and above said reserve value.

Upon the filing of the affidavit of defence, the plaintiff, under a rule of the court below, took judgment against the defendant for the amount admitted to be due, electing not to accept the same in full satisfaction, but to proceed for the

balance of his claim; and thereupon he entered a rule for judgment for want of a sufficient affidavit of defence.

On January 20, 1890, said rule having been argued, the following opinion was filed, SCHUYLER, P. J.:

This is an action to recover the amount of $2,000, being the amount of a policy of insurance issued by the defendant company, an Ohio corporation, upon the life of the plaintiff's intestate.   The person insured committed suicide, and the only defence set up grows out of that circumstance.   In support of this defence, we are referred to the eighth condition of the policy, which provides that "in case the assured shall die by his own hand, whether sane or insane, this policy shall become null and void."   Of course, if the eighth condition stood alone it would be a complete answer to the present suit, but the policy contains another condition, which reads as follows:

"13. Whether the insured reside in Ohio or elsewhere, this policy is issued subject to the following named section of the Ohio Revised Statutes: 'Section 3626. All companies, after having received three annual premiums on any policy issued on the life of any person in this state are estopped from defending upon any other ground than fraud, against any claim arising upon such policy by reason of any errors, omissions or misstatements of the assured in any application made by such assured on which the policy was issued except as to age.'"

It is admitted that the three annual premiums here referred to, were paid by the plaintiff's intestate.   If the foregoing section is a fair sample of the legislation which goes to make up the revised statutes of our sister state, it may well be doubted whether revision, per se, is an unmixed blessing; for the section, as it stands and taken in its entirety, is almost, if not quite meaningless, or, if it has any meaning, it is an absurd one, which cannot be imputed to the legislature, if there is any way of escape.   It is not easy to see how the assured could have any claim under his policy "by reason of any errors, omissions or misstatements" in his application, which is his act, and yet this impossible claim is the only one which the defendant is estopped from defending against, if the section under consideration is read literally.

But such a reading renders the section nugatory, in viola-

Opinion of Court below.

tion of the cardinal rule, that in the consideration of statutes effect is to be given to every part: Howard Ass'n's App., 70 Pa. 344: "All statutes are to be considered so as to give them operation if the language will permit, instead of treating them as meaningless." This may be done, in the case at bar, by simply transposing the words, "against any claim arising upon such policy," so as to make the section read as follows: "All companies, after having received three annual premiums on any policy, are estopped from defending against any claim arising upon such policy upon any other ground than fraud, by reason of any errors," etc. In this way we not only give effect to the section, but the very effect, we think intended by the legislature. It is well known that it has become quite common for life insurance companies to insert in their policies a clause making them incontestable after three years from date, and a very proper feature it has proved to be. There is scarcely room for doubt that some such thought as this was in the legislative mind, when this section of the act under consideration was passed, and that its involved meaning was the result of tampering, during its passage, in the interest of companies not yet prepared to accept the principle of incontestability.

One thing is certain, the passage of the section was for the protection, not of the companies, but of the insured; and that purpose is accomplished by the construction we have reached. It is almost as certain that the object of inserting the section in the policies issued by the defendant company, was to create the impression that it was intended as an offset to the conditions against suicide. That condition to most people is very objectionable, not because they have any idea of committing suicide, but because the policy is avoided if the insured shall die by his own hand, even in a fit of insanity. A man may have been insured half a century, and may have paid his premiums promptly in hope of leaving his family provided for, and may suddenly lose his mind. If, while in this pitiable condition, which is by no means uncommon, he should take his own life, all claims of his family, under the policy, would be swept away by the condition against suicide.

People about to insure their lives think of these things. The peculiar phraseology of condition thirteen, aided by the glib tongue of the insurance agent, is well calculated to quiet

all apprehension under condition eight, so that the danger of doing the defendant injustice by our construction of the former condition is not very imminent. Moreover, the construction we have adopted accords with the well-recognized rule that "in case of doubt as to meaning of terms emanating from an insurance company, they are to be construed most strongly against the insurer:" Burkhard v. Insurance Co., 102 Pa. 266.

—The rule for judgment having been made absolute, judgment was entered in favor of the plaintiff for $1.943.70, whereupon the defendant took this appeal, specifying that the court erred:

1. In making absolute the rule for judgment.

2. In entering judgment for want of a sufficient affidavit of defence.

*Mr. Charles F. Walter*, and *Mr. W. M. Ramsey* of Cincinnati, for the appellant:

1. Examination of § 3626, Revised Statutes of Ohio, will show that it was a revision of § 32, act of April 27, 1872, 69 Ohio L. 160, which was as follows: "All life insurance companies, after having received at least three annual premiums on any policy issued on the life of any person in the state, are hereby estopped from defending against any claim arising upon such policy by reason of any errors, omissions, or misstatements of the assured in any application made by such assured, on which said policy was issued, except as to age or fraud." It is assumed that it was the intention of the legislature, in merely revising its system of statutory law, and in substantially reproducing entire statutes or sections, to leave the law unchanged, unless the intention to change plainly appears.

2. This is the settled rule of law as to statutory construction. In State v. Shelby Co., 36 Ohio 330, the court says: "Neither an alteration in phraseology, nor the omission or addition of words in the later statute, necessarily requires a change of construction: Conger v. Barker, 11 Ohio 1; Sedgwick on Stat. and Const. Law, 299, 365; Williams v. State, 35 Ohio 175. The intent to give the new act a different effect from the old, should be clearly manifest." There is a long list of Ohio decisions to the same effect. Suppose that in § 3626, the words "or fraud," transposed from their position in § 32 of the act

Arguments.

of 1872, had been omitted, then the insurer would have been estopped from defending against any claim arising upon such policy, by reason of the errors, etc., in the application, except as to age. Of this there can be no doubt; and this consideration is conclusive on the subject.

3. Omitting the words, " upon any other ground than fraud," brings into clear relief that the section was intended to relate only to the subject of statements in applications, confining it to fraudulent statements: the insurer shall not defend against a claim upon such a policy, upon the ground that false statements were made, unless he can show to the satisfaction of a jury that such misstatements were fraudulently made. The insertion of a comma after the word "policy," in the section, aids its construction slightly, and it is well settled that neither punctuation, nor the absence of punctuation, is to be regarded seriously in the interpretation of statutes. It is submitted the construction made by the court below was erroneous, and the judgment should be reversed.

*Mr. H. J. Steele*, for the appellee :

1. A contract of insurance is governed by the same principles which govern other contracts: May on Insurance, § 3. Even intentional suicide will not be a defence to the policy, when it contains no clause avoiding it in such event: Patrick v. Insurance Co., 67 Barb. 202. If the section of the Ohio statute, quoted in this policy, had ended with the word fraud, it would have been perfectly intelligible, but the language following that word, if read literally, is the veriest nonsense. There being nothing in the context to explain its ambiguity, we must resort to the reason and spirit of the law in construing it. Plainly the purpose of the statute was the protection of the insured, and its leading object was to limit the period in which insurers might interpose defences, not affecting the merits of the contract, to three years, while allowing them the right to defend, even after that period, when fraud had been practiced in procuring the policy. This being the reason and spirit of the statute, it should be so interpreted: Commonwealth v. Fraim, 16 Pa. 169; Sedgwick on Stat. and Const. Law, 196; Philadelphia v. Railway Co., 102 Pa. 197.

2. The insertion of the words of exclusion which follow the

word fraud, does not restrict the operation of the section, but simply specifies and limits the nature of the fraud that can avail as a defence. It must not be lost sight of that by placing in the policy this section of the Revised Statutes of Ohio, it is made a part thereof and must be treated as any other condition. A condition in such a policy is to be interpreted by an entirely different rule from that applicable to a legislative act. It must be construed liberally in favor of the insured : May on Insurance, § 175 ; First N. Bank v. Insurance Co., 95 U. S. 679 ; Fowkes v. Assurance Ass'n, 3 Best & S. 929 ; Anderson v. Fitzgerald, 4 H. L. 513 ; Burkhard v. Insurance Co., 102 Pa. 266. Especially is this so, when a condition is expressed in language calculated to mislead the unwary : Metropolitan L. Ins. Co. v. Drach, 101 Pa. 283.

OPINION, MR. JUSTICE STERRETT :

In his statement, plaintiff claimed $2,000, the full face value of the policy. The company, in its affidavit of defence, averred that the insured, by reason of his having committed suicide on July 27, 1889, violated the eighth condition of his policy, and thereby rendered the same null and void except as to the sum of $74.52, the "reserve value" of the policy, which is protected by the ninth condition thereof. The eighth condition, above referred to, provides, " that, in case the insured shall die by his own hand, whether sane or insane, . . . . this policy shall become null and void."

The plaintiff, having elected to take judgment for the reserve value admitted to be due, and proceed for the residue, entered a rule for judgment for want of a sufficient affidavit of defence. The rule was afterwards made absolute, and judgment entered accordingly. From that judgment this appeal was taken, and the only question for our consideration is whether the court below erred in construing the thirteenth condition of the policy, and holding that the company was estopped by its provisions from insisting on the bar of the eighth condition, above quoted. The thirteenth condition is as follows :

" Whether the insured reside in Ohio or elsewhere, this policy is issued subject to the following named section of the Ohio Revised Statutes : 'Sec. 3626. All companies, after having re-

ceived three annual premiums on any policy issued on the life of any person in this state, are estopped from defending upon any other ground than fraud, against any claim arising upon such policy by reason of any errors, omissions, or misstatements of the assured in any application made by such assured on which the policy was issued except as to age.' "

It was conceded that the three annual premiums were paid by plaintiff's intestate, and, if the learned president of the Common Pleas was right in his construction of the thirteenth condition, the company was estopped from enforcing the bar of the eighth condition of the policy in this case; but we are of opinion that he was mistaken as to the scope and effect of the thirteenth condition. In our opinion, it has no effect whatever on the eighth condition.

The condition in question is not as clearly expressed as it might have been, and its meaning is further obscured by the omission of a comma after the words "such policy." Formerly, it was unusual to punctuate legislative acts and deeds, but in construing them the courts always read them with such stops as gave effect to the whole: 4 I. R. 65. It is well settled that neither punctuation nor the absence of points is to be seriously regarded in the construction of statutes. It was intended by the condition under consideration that the company, after having received three annual premiums, should be estopped from defending, etc., on the ground that errors, omissions, or misstatements were made by the assured in the application on which the policy was issued, unless such errors, omissions, or misstatements were of such a character as to amount to actual fraud, excepting, however, misstatements as to age, whether fraudulently made or not. In other words, the thirteenth condition relates solely to defences based on errors, omissions, or misstatements in the application, and, with the exception of errors or misstatements as to age, it debars the company from defending on either ground in case the error, omission, or misstatement was inadvertently or innocently made; but it does not prohibit the company from defending on the ground that the errors, omissions, or misstatements were fraudulently made, or on the ground that error or misstatement as to age was actually made, whether fraudulently or not.

We find nothing in any of the provisions of the policy that

was intended to estop the company, in any case of suicide, from setting up the bar to the eighth condition, except to the extent of the " reserve value " of the policy, to which reference has aleady been made.

Judgment reversed.