**[J-95A-2025, J-95B-2025, J-95C-2025, J-95D-2025 and J-95E-2025] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 97 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 560 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Decision of the |
| | : | Bureau of Workers' Compensation |
| | : | at No. DSP-2809684-1 dated May |
| BUREAU OF WORKERS' COMPENSATION | : | 20, 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED:  November 19, 2025 |
| | : | |
| Appellee | : | |
| | | |
| 700 PHARMACY, | : | No. 98 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 561 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Decision of the |
| | : | Bureau of Workers' Compensation |
| | : | at No. DSP-3130152-3 dated May |
| BUREAU OF WORKERS' COMPENSATION | : | 20, 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED:  November 19, 2025 |
| | : | |
| Appellee | : | |
| | | |
| 700 PHARMACY, | : | No. 99 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 562 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Decision of the |
| | : | Bureau of Workers' Compensation |
| | : | at No. DSP-2917433-2 dated May |
| BUREAU OF WORKERS' COMPENSATION | : | 20, 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED:  November 19, 2025 |
| | : | |
| Appellee | : | |

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 100 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 563 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Order of the Bureau |
| | : | of Workers' Compensation at No. |
| | : | DSP-942461-8 dated May 20, |
| BUREAU OF WORKERS' COMPENSATION | : | 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED: November 19, 2025 |
| | : | |
| Appellee | : | |
| | | |
| 700 PHARMACY, | : | No. 101 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 564 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Order of the Bureau |
| | : | of Workers' Compensation at No. |
| | : | DSP-3242427-2 dated May 20, |
| BUREAU OF WORKERS' COMPENSATION | : | 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED: November 19, 2025 |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE WECHT**                                              **DECIDED: June 16, 2026**

The Workers' Compensation Act prohibits medical providers from referring their workers' compensation patients for "goods" or for "services" if the provider has a financial interest in the entity or person receiving the referral.[1] The Majority holds that this restriction unambiguously prohibits referrals only for certain specified kinds of goods or services. The Majority's interpretation is plausible only if one ignores the provision's

---

[1]    77 P.S. § 531(3)(iii).

punctuation.  What the Majority is selling today is not a plain language interpretation at all.  A statute cannot be unambiguous if a "proper reading"[2] requires ignoring part of it.

The anti-referral provision of the Workers' Compensation Act makes it unlawful for a medical provider to:

> refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods or services pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral.[3]

The Majority finds that this language prohibits eight separate categories of self-referrals.  The Majority is miscounting.  There are ten distinct prohibitions within the text.  The Majority's mistake is that it treats the last two items on the list ("goods" and "services") as a single qualifying phrase ("goods or services") that modifies the preceding list items.[4]  The statute's punctuation does not support this interpretation.  The rules of the English language suggest that, by inserting a comma before "goods or services," the General Assembly intended to prohibit self-referrals for "goods" in addition to self-referrals for "services."  The phrase "goods and services" does not modify the prior categories.  "Goods" and "services" are the last two list items.

---

[2]  Majority Opinion at 12.

[3]  77 P.S. § 531(3)(iii).  The provision also makes it illegal for a provider to circumvent the law by entering into a cross-referral arrangement with another provider.  *Id.* ("It is unlawful for a provider to enter into an arrangement or scheme such as a cross-referral arrangement, which the provider knows or should know has a principal purpose of assuring referrals by the provider to a particular entity which, if the provider directly made referrals to such entity, would be in violation of this section.").

[4]  Majority Opinion at 12 ("The proper reading of the Anti-Referral Provision's plain language is that the phrase 'goods or services' modifies the enumerated medical services such that it is necessary to read 'goods or services' after each enumerated service[.]").

Making sense of this provision is complicated by the General Assembly's omission of an Oxford comma.[5]  A useful exercise, and a throwback to grade school, is to ask where the legislature would have placed the Oxford comma if it had used one.  As I see it, the only logical place is after "goods," just prior to the coordinating conjunction and final list item of "services."

> [I]t is unlawful for a provider to refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods, or services pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral.

Because the Majority (for reasons unexplained) is willing to disregard the comma before "goods or services", I suspect that the Majority would put the missing Oxford comma between "home infusion therapy" and "diagnostic imaging."

> [I]t is unlawful for a provider to refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy, or diagnostic imaging, goods or services pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral.

As this blue penciling illustrates, the Majority's comma blindness carries significant interpretive consequences here.  By ignoring the comma before "goods or services," the Majority frees itself up to argue that "goods or services" was intended to modify the eight

---

[5]    An Oxford, or "serial," comma is the comma after the penultimate item in a list of three or more things.  ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 165 (1st ed. 2012) (noting that "[a]uthorities on English usage overwhelmingly recommend using the serial comma to prevent ambiguities," but "some legal drafters omit it anyway," meaning that "courts should not rely much if any on its omission").

categories that come before it, "such that it is necessary to read 'goods or services' after each enumerated service."[6]

The rules of statutory interpretation do not countenance the Majority's disregard for punctuation.[7] The Majority cannot seriously claim that the *only* reasonable interpretation of the anti-referral provision is one that is foreclosed by the statute's own punctuation.[8] There is another eminently reasonable alternative interpretation: "goods" and "services" represent distinct prohibitions. Not only is this interpretation reasonable, it is far more reasonable than the Majority's interpretation, since it does not require ignoring parts of the statute.

The Majority rules out any broader interpretation of "goods or services" by invoking the principle that "[e]very statute shall be construed, if possible, to give effect to all its

---

[6]  Majority Opinion at 12. In other words, the Majority suggests that the legislature intended to ban referrals for laboratory goods or services, home infusion goods or services, diagnostic imaging goods or services, and so on.

[7]  SCALIA & GARNER, *supra* note 5, at 161 ("No intelligent construction of a text can ignore its punctuation."). Historically, legislatures did not punctuate legislation. *Starck v. Union Cent. Life Ins. Co.*, 19 A. 703, 703 (Pa. 1890) ("Formerly, it was unusual to punctuate legislative acts and deeds[.]"); *cf.* SCALIA & GARNER, *supra* note 5, at 161 ("[I]n days of yore, it was held that because many legislators voted only on the basis of bills that they heard read aloud—without seeing the printed page—they could take no notice of the punctuation marks."). In prior eras, it was therefore "well settled that neither punctuation nor the absence of points [was] to be seriously regarded in the construction of statutes." *Starck*, 19 A. at 703. Today, however, the Statutory Construction Act permits punctuation to "be used to aid in the construction [of statutes] finally enacted after December 31, 1964." 1 Pa.C.S. § 1923(b); *see, e.g.*, *Cash Am. Net of Nev., LLC v. Pa. Dept. of Banking*, 8 A.3d 282, 293 (Pa. 2010) (relying upon comma placement to interpret a provision of the Consumer Discount Company Act). The Workers' Compensation Act's anti-referral provision was enacted in 1993. This Court therefore can and should proceed under the assumption that the provision's punctuation provides evidence of the legislature's intent.

[8]  SCALIA & GARNER, *supra* note 5, at 162 ("As is the case with other indications of meaning, the body of a legal instrument cannot be found to have a 'clear meaning' without taking account of its punctuation. There is no reason to exclude punctuation from this stage of the inquiry.").

provisions."[9]  The Majority emphasizes that, if the General Assembly had intended for "goods" and "services" to be separate prohibitions, then the eight other kinds of referrals mentioned in the statute are mere surplusage.[10]  That's because referrals for the first eight items listed in the statute (physical therapy, rehabilitation, chiropractic, *etc.*) would also constitute referrals for "goods," "services," or both.[11]

I concede that, under my interpretation, the legislature did not need to include the first eight examples of prohibited self-referrals in the statute.  For whatever reason, the General Assembly seems to have created ten distinct prohibitions, the last two of which are broad enough to encompass the first eight.  This would be akin to a law prohibiting all cats, dogs, and animals from entering government buildings.  It is not so much that the freestanding prohibitions on "cats" and "dogs" are "ineffective."[12]  It is that the legislature simply used more words than were strictly necessary to accomplish a goal.

The presumption that legislators avoid surplusage, like all canons of construction, must yield in the face of competing considerations.[13]  As the Majority itself recognizes,

---

[9]     1 Pa.C.S. § 1921(a); Majority Opinion at 18.

[10]    Majority Opinion at 18 ("Not only would prescription drugs and pharmaceutical services fit within the Insurer's reading of 'goods or services,' but so would laboratory goods and services, physical therapy goods and services, rehabilitation goods and services, and the rest of the Anti-Referral Provision's enumerated medical services.  Such an interpretation would render those enumerated services mere surplusage in contravention of our rules of statutory interpretation."); *id.* at 12 ("This is the only interpretation that gives effect to the entirety of the Anti-Referral Provision.  *See* Pa.C.S. § 1921(a).").

[11]    The categories of "goods" and "services" do not just swallow the remainder of the statute; the terms are so broad that they seemingly encompass the entire universe of potential referrals.

[12]    1 Pa.C.S. § 1921(a).

[13]    SCALIA & GARNER, *supra* note 5, at 59 ("Principles of interpretation are guides to solving the puzzle of textual meaning, and as in any good mystery, different clues often point in different directions.").

judicial interpretations creating surplusage are merely "disfavored," and the Statutory Construction Act states only that courts should give effect to all provisions of a statute "if possible."[14] While it is somewhat odd for the General Assembly to engage in surplusage, it is not unheard of either.[15] Here, oddity alone does not justify ignoring the anti-referral provision's punctuation. Even setting aside the Majority's punctuation problem, today's interpretation also conflicts with other canons of construction that the Majority notably does not mention. The last antecedent rule, for example, instructs that a clause or phrase appearing at the end of a list (here, "goods or services") typically only modifies the immediately preceding noun or phrase (here, "diagnostic imaging").[16] While this rule is not absolute and may "be overcome by other indicia of meaning," it is often observed that the canon is "quite sensible as a matter of grammar."[17] Because the Majority concludes that the phrase "goods or services" modifies all eight preceding list items, the Majority's interpretation does not square with the last antecedent rule.

Put simply, I am unconvinced by the Majority's instance that the statutory language before us plainly and unambiguously prohibits only eight categories of self-referrals. The Majority relies almost entirely upon the presumption that the General Assembly typically

---

[14] Majority Opinion at 10 (quoting 1 Pa.C.S. § 1921(a) and *Jackiw v. Soft Pretzel Franchise (W.C.A.B.)*, 329 A.3d 1152, 1156 (Pa. 2025)).

[15] *See McGuire on behalf of Neidig v. City of Pittsburgh*, 285 A.3d 887, 893 (Pa. 2022) (discussing the "synonym-heavy, belt-and-suspenders draftsmanship to which legislatures sometimes are prone").

[16] *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (quoting NORMAN SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 47.33 (6th rev. ed. 2000) for the proposition that "[r]eferential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent").

[17] *Id.* (citation omitted); *accord Pa. Dept. of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 760 (Pa. 2008) (stating that the last antecedent approach generally prevails "in absence of evidence of some contrary purpose").

avoids surplusage, while failing to acknowledge that today's interpretation conflicts both with the statute's punctuation and with the last antecedent rule. If the text before us is clear at all, it clearly says the opposite of what the Majority claims, given the legislature's comma placement. That said, the provision is likely ambiguous, given that analyzing its text requires balancing of multiple conflicting canons of construction. Once one concedes ambiguity, this is no longer a difficult case, since it is well understood that the legislature banned self-referrals—as part of a larger package of cost-containment reforms in 1993—because it wanted broadly to "preven[t] physicians from acting in their own self-interest" when making referrals.[18] Because the Majority's surplusage-driven interpretation thwarts, rather than advances, that legislative goal, we should not embrace it.[19]

Refusing to admit ambiguity in the anti-referral provision, the Majority claims that my analysis "requir[es] the insertion of a comma the legislature did not include."[20] I am unsure what the Majority is talking about. Regardless of whether one believes that the statute's penultimate prohibition is "home infusion therapy" or "goods," there is no comma after either of them. There is therefore no difference, Oxford comma-wise, between my interpretation and the Majority's interpretation, since both plausible interpretations omit it. Unlike the Majority's interpretation, my reading has the benefit of not ignoring the comma before "goods or services." I have illustrated the possible placement of Oxford commas on page four of this dissent only to bring the Majority's disregard for the pre-"goods or

---

[18] *Eighty-Four Min. Co. v. Three Rivers Rehabilitation, Inc.*, 721 A.2d 1061, 1067 (Pa. 1998).

[19] 1 Pa.C.S. § 1921(c)(1)-(8) (stating that courts interpreting ambiguous statutory text may consider, among other things, "[t]he occasion and necessity for the statute," "[t]he circumstances under which it was enacted," "[t]he mischief to be remedied," and "[t]he consequences of a particular interpretation").

[20] Majority Opinion at 14 n.12.

services" comma into sharper focus.  My position requires adding nothing to the statutory text.  The Majority's claim to the contrary is baffling.

The Majority also insists that my interpretation "requires the deletion of the 'or' between 'home infusion therapy' and 'diagnostic imaging.'"[21]  As with the claim that I am somehow adding a comma to the statute, the Majority does not fully explain this belief.  The Majority seems to reject the possibility that a list item (here, "home infusion therapy or diagnostic imaging") can ever be compound.  The Majority is apparently under the mistaken belief that any mention of the word "or" within a list necessarily signals the impending conclusion of the list.  That's not correct.[22]

The Majority doubles down on calling the anti-referral provision unambiguous while balancing canons of construction that weigh in favor of divergent interpretations.  The Majority baldly claims that application of the rule against surplusage "clearly overcomes any application of the last antecedent rule" in this case.[23]  The Majority does not justify that conclusion in any real way, nor does the Majority even attempt to respond to my broader point that a statute cannot be considered unambiguous if interpreting it requires ignoring a comma and violating the last antecedent rule.[24]

---

[21]  *Id.*

[22]  Would anyone bat an eye if the rules of a contest limited participation to residents of the 48 continental United States, Alaska or Hawaii, the District of Columbia, or Puerto Rico?

[23]  *Id.* at 20 n.15.

[24]  SCALIA & GARNER, *supra* note 5, at 161 ("No intelligent construction of a text can ignore its punctuation."); *id.* at 162 ("As is the case with other indications of meaning, the body of a legal instrument cannot be found to have a 'clear meaning' without taking account of its punctuation.  There is no reason to exclude punctuation from this stage of the inquiry.").

Today's decision is not a plain language decision.[25]  What the Majority offers is, at best, an ambiguity analysis that fails to consider the purpose of the Workers' Compensation Act's anti-referral provision.    I respectfully dissent.

---

[25]    If the Majority's reading of the statute were the only reasonable interpretation, either the Appellant, the Commonwealth Court, or the fee-review hearing officer (a leading authority on Workers' Compensation law) likely would have embraced it.  Until today, however, no one expressed the Majority's supposedly inarguable view that "goods or services" simply modifies the categories that come before it.  Indeed, we did not even grant *allocatur* in this case to weigh-in on whether "goods or services" is a standalone prohibition, which the Appellant here concedes.  This appeal was supposed to be about whether referrals for prescription drugs constitute referrals for "goods or services."  *See* Brief for 700 Pharmacy at 26 ("'Goods or services' can have various meanings, but a medication dispensed by a licensed pharmacy is not a 'good.'").  If the Majority's interpretation of the anti-referral provision is so plain, why did no one embrace it before today's *sua sponte* journey beyond the briefs?